**TUSI PASI TIAPULA, SAVALIGA MASUNU, and KOLOPA P. TUIASOSOPO, for themselves and on behalf of the PAEPAEULI and LEAPAGATELE FAMILIES, et al., Plaintiffs,**

**v.**

**ISUMU LEAPAGATELE'S CHILDREN, et al., Defendants.**

High Court of American Samoa
Land and Titles Division

LT No. 10-91
LT No. 33-95
LT No. 35-95

May 17, 2002

Before RICHMOND, Associate Justice, and LOGOAI, Chief Associate Judge.

Counsel: For Plaintiffs, Gata E. Gurr
For Defendants Isumu Leapagatele's Children, S. Salanoa Aumoeualogo
For Defendants Vaiga Logo and Lagiula Kaleuati, Afoa L. Su`esu`e Lutu
For Defendants Sesilla Vollrath, Seigfried Vollrath, Jr. and Gisela Vollrath, Marie A. Lafaele

OPINION AND ORDER
(Trial Phase I)

Leapagatele Kesi ("Leapaga"), as the *sa`o* (head chief) of plaintiff Leapagatele Family ("Leapaga family"), commenced this prolonged litigation in 1991 when he filed LT No. 10-91. Leapaga later died and was replaced by the three family members, the plaintiffs now named as individuals in the case caption. Isumu Leapagatele ("Isumu") and defendant Isumu's Children ("Isumu's children"), along with several other individuals, were the original defendants in LT No. 10-91. Isumu also died, leaving his children as the defendants representing his and their interests.

LT No. 33-95 and LT No. 35-95 were also filed, and the three actions were consolidated. Thus, as the litigation progressed, numerous other individuals and entities were added as defendants in LT No. 10-91 or as parties to the other two actions.

Leapaga initiated LT No, 10-91 to set aside the registration by the Territorial Registrar on January 11, 1972, of land named "Leatuvai,"

consisting of approximately 12.696 acres, in the Village of Nu`uuli, American Samoa, as individually owned land of Isumu and Isumu's children, and to quiet title to the same land, surveyed as approximately 13.190 acres and registered on October 15, 1950, as the communal land of the Paepaeuli family. The 1950 registration was ordered by this Court in *Maluia v. Isumu*, 2 A.S.R. 557 (Trial Div. 1950). The title issue framed in LT No. 10-91 is central to the full determination of these actions. Isumu and Isumu's children entered numerous transactions involving the land with other persons, whose rights in the land are dependent on the title held by Isumu or Isumu' s children at the time of their respective transactions.

The transactions by Isumu and Isumu's children with third persons are appropriately included in this litigation. However, they made management of the trial complex and unwieldy. Therefore, we ordered a separate trial on the underlying title issue. The parties and their counsel identified in the counsel section at the head of this decision were the active participants in the trial.

### Facts

Isumu began to clear and cultivate this land in support of his immediate family many years ago. In *Maluia*, Isumu maintained that he started to work the land in 1929. He also admitted that he was on the land with his father Leapaga Tapili's permission. Leapaga Tapili was the Leapaga family's *sa`o* from 1906 until 1940. He claimed, in *Maluia*, that he authorized Isumu to cultivate the land but not until 1947. However, Leapaga Tapili was elderly and feeble at the time of *Malula*. He had also resigned from the Leapaga title and been replaced by Leapaga Masunu in 1940. Some evidence in *Maluia* also indicated that Isumu's grandfather Faitala, evidently an untitled member of the Leapaga family, acquired the land and gave it to Leapaga Tapili at some earlier time. This at least suggests that Leapaga Tapili had individual ownership of the land to pass on to Isumu. In light of all these factors, however, we are persuaded that Isumu first went on the land by permissive occupancy, at some juncture during the portion of Leapaga Tapili's tenure as the Leapaga family's *sa`o* from 1929 until 1940.

In 1949, Isumu had the land surveyed and offered to register it as his individually owned land. Six objectors came forth. The matter was adjudicated in *Maluia*. Isumu emphatically testified during the trial in *Maluia* that he individually owned the land. The Court found, however, that the land was communal land, and that Isumu was on the land under the authority of his father Leapaga Tapili as the *sa`o* of the Leapaga family. The Court also found the existence of the Paepaeuli family of Nu`uuli, comprised of six *matai* (chiefs) who participated in the action

and were identified as the Lavata`i, Maluia, Leapaga, Fagaima, Taumua, and Tonu titles. On this basis, the *Maluia* Court held that the land was communal land of the Paepaeuli family. On October 15, 1950, the land was registered as the Paepaeuli family's communal land by court order.

Clearly, however, based on the evidence in the present case, there is no Paepaeuli family of Nu`uuli. The Lavata`i, Maluia, and Leapaga are *matai* titles from Nu`uuli. The Fagaima title is from the Village of Tafuna. Taumua and Tonu are not known *matai* titles, and apparently the persons so named in *Maluia* were actually untitled members of presently unknown families. "Paepaeuli" is the name associated with the site of the Leapaga guest house.

We also note that in *Maluia,* the holder of the Puailoa title of Nu`uuli claimed the land through cultivation by his family's members. The Court found, however, that the Puailoa cultivation was outside the land, but noted that the Puailoa family probably had communally owned land nearby. This fact, along with evidence in this case, is indicative of communal land surrounding the land. On the other hand, there is also other adjacent individually owned land.

Because of Leapaga Tapili's assignment to Isumu, the Court in *Maluia* also permitted Isumu to maintain his plantations on the land. Isumu continued to occupy and use the land without objection or interference by the *sa`o* or members of the Leapaga or any other family for the next 20 years. While the evidence in *Maluia* showed that the persons held to be the *matai* of the fictitious Paepaeuli family cultivated portions of the land along with Isumu prior to 1950, no one else from the families in the Paepaeuli group, or any other family, used the land between 1950 and 1970. It appears that Isumu and his family exclusively used the land during this period.

In 1971, Isumu again had the land surveyed and, this time, offered it for registration as the individually owned land of himself and his children. The offer underwent the statutory registration process, no one objected, and the land was registered on January 11, 1972, as the individually owned land of Isumu and Isumu's children.

The parties contested whether Isumu had identical lands surveyed in 1950 and 1971. They presented considerable evidence on this issue. We are persuaded that both surveys are of the same land and will not dwell on this evidence in great detail. The total areas of each survey are certainly not quite the same, approximately 13.190 acres in 1950 and approximately 12.696 acres in 1971, a difference of about 0.494 of an acre. However, each survey was done by a different surveyor who may have used slightly different techniques. Moreover, Magnetic North was

used in surveys prior to 1962, when the present Datum system and True North were introduced in the territory. These factors can readily result in somewhat different surveys of the same land. In addition, the land in each survey has substantially the same boundary configuration and is in the same location in the field. The only significant difference is the jog appearing along the portion of the southerly boundary near the southwesterly corner in the 1950 survey, as distinguished by a generally straight southerly boundary in the 1971 survey. Finally, the only professional surveyor who testified opined that the land was essentially the same in each survey, and we find that he used sound methods and analysis in reaching this opinion.

Clearly, following the registration in the name of Isumu and Isumu's children as individually owned land in 1972, Isumu and his family continued to occupy and use the land consistently with the authority purportedly established by the registration. He sold subdivided portions of the land to third parties, who or whose successors are parties to this litigation. He actually began this activity as early as 1950 and continued to enter these transactions up to 1999. One of his daughters entered additional transactions even after LT No. 10-99 was filed. The specific circumstances of these transactions are not relevant, however, to determination of the immediate title issue and, therefore, are not yet in evidence. Those findings will wait until trial of the separated issues becomes necessary.

Isumu also permitted other persons in his family to live on the land. In 1973, he allowed his then wife's relatives to live there, and in 1977, he signed a separation agreement for their residence. However, after his wife died and he remarried, his new wife and former wife's relatives could not get along harmoniously, and eventually Isumu successfully evicted the relatives on the ground that they were on the land under a terminable license. *See generally Isumu v. Palaia*, 12 A.S.R.2d 98 (Land & Titles Div. 1989). The evidence even indicates that Leapaga himself sought Isumu's permission on occasion to harvest produce from the land.

Again, following Isumu's registration in early 1972, no other Leapaga family member, or anyone else without Isumu's permission, ever occupied and used the land. Also, no one carried out any objection to the recorded title and presence of Isumu and Isumu's children, or to others' occupancy and use of the land by Isumu's subdivision sales or authorizations until LT No. 10-91 was filed in 1991, approximately 20 years later. Only one aborted effort was made when, in 1978, Leapaga and another family member made but then abandoned an objection to a separation agreement signed by Isumu. *See generally Isumu v. Leapaga*, LT No. 40-78, slip op. (Land & Titles Div. 1978).

Finally, we point out that Isumu did not provide much, if any, *tautua* (traditional service) to the Leapaga title for many years. Based on the evidence in *Maluia,* he ceased to render *tautua* in 1948 or 1949. It also appears that after 1938 or 1939, Isumu no longer extensively participated in the Leapaga family's affairs, and may not even have served his father Leapaga Tapili, or Leapaga Masumu, who ascended to the title in 1940, according to Samoan traditions. Isumu certainly did not serve his brother Leapaga, who took over the title in 1958. Leapaga and Isumu had a particularly confrontational personal relationship. *See generally Randall v. Leapaga*, 25 A.S.R.2d 90 (Land & Titles Div. 1993).

## Discussion

Based on the foregoing findings of fact and the discussion on the following legal issues genuinely raised by these proceedings, we conclude that the Isumu and Isumu's children originally, and now Isumu's children, own the land as individually owned land.

### A. *Maluia is not Res Judicata*

■ The doctrine of *res judicata* is a primary issue in this case. *Res judicata* holds that a final judgment on the merits in an action bars a later action involving the same parties, or their privies, and the same issues. *See Taulago v. Patea*, 4 A.S.R.2d 186-87 (Land & Titles Div. 1987); *Te'o v. Estate of Sotoa*, 5 A.S.R.2d 80, 97 (Land & Titles Div. 1987), *aff'd Estate of Sotoa v. Te'o*, 8 A.S.R.2d 165, 169 (App. Div. 1988). The policy is aimed at curtailing multiple, vexatious and expensive litigation and wasted judicial resources. 46 AM. JUR. 2D *Judgments* § 515 (2000).

The judgment in *Maluia* held that the land then at issue was the communal land of the Paepaeuli family of Nu'uuli and directed that the title be so registered. The parties in this action strenuously put at issue whether ownership of the land adjudicated in *Maluia* was the same land at issue in this action. The land as litigated in 1950 in *Maluia* and then registered was not exactly the same size as the land litigated in this action. The land in the survey presented in *Maluia* and registered in 1950 was approximately 0.494 of an acre greater in area than the land registered by Isumu without objection in 1972 and now litigated for ownership in this action. However, the configuration of the land, except partially along one boundary, was virtually the same in both lawsuits. A professional surveyor studied available surveys and related information and is certain that both registrations are of essentially identical land areas. The physical differences are, therefore, immaterial for purposes of applying the *res judicata* doctrine. We conclude that issue preclusion is present.

329

The common identity of the parties or their privies, however, is another matter. Isumu was a party in both *Maluia* and the present action. His children, parties in this action, are his privies for *res judicata* purposes. The opposing parties in both cases are, however, a different matter.

The Court in *Maluia* adjudicated title to the land as the communal land of the Paepaeuli family of Nu'uuli, comprised of six *matai* who had cultivated portions of the land. The Court appeared to hold that the six identified members of this family owned undivided shares in the land in the nature of tenancy-in-common interests. Three of the named *matai* were *sa'o* of distinct families in Nu'uuli. One was the *sa'o* of a family from Tafuna. The remaining two persons were not titleholders. The Paepaeuli family does not exist in fact. In essence, the Court created a fictitious family that was inconsistent with usual Samoan customs pertaining to families and villages. While it is true that the holder of the Leapaga title was one of the six members, the court did not recognize his claim over the land, except in common with the other five members. The interests of the six members in common in *Maluia* were distinct from the interests of the Leapaga family in this case. We therefore conclude that the judgment in *Maluia* does not provide party preclusion for purposes of the issue of ownership of the land in the present litigation.

B. Isumu Adversely Possessed the Land

The Leapaga family, represented by the three named plaintiffs who are family members replacing the deceased Leapaga, claims that the land is the Leapaga family's communal land. Their claim is entitled to a presumption favoring communal ownership of land in American Samoa. *Leota v. Faurnuina*, 4 A.S.R.2d 11, 13 (App. Div. 1987).

The presence of surrounding communal land is sometimes mentioned in support of the presumption. *Avegalio v. Leatuinauga*, 18 A.S.R.2d 9, 11 (Land & Titles Div. 1991). In this case, however, both communal land and individually owned land are adjacent to the land.

Beyond the presumption, the named plaintiffs' claim is based in part on *Maluia*, even though the judgment in that case held that the fictitious Paepaeuli family, not the Leapaga family, owned the land as communal land. The resulting title registration is still in the name of the Paepaeuli family. Nonetheless, the court in *Maluia* found that Isumu occupied and cultivated the land under Leapaga Tapili's authority, indicative of the Leapaga family's communal ownership. Moreover, though Isumu claimed in *Maluia* that he cleared the land from virgin bush, he also admitted that he occupied the land by his *sa'o's* designation. Additionally, the present holder of the Maluia title testified that the land is the Leapaga family's communal land.

330

■ It appears that the Leapaga family has a legitimate claim to communal ownership of the land. We acknowledge that a family member usually cannot adversely possess an assigned portion of his family's communal land and acquire individual title to the land in this manner. *See Reid v. Puailoa*, 1 A.S.R.2d 85, 88 (Land & Titles Div. 1983) (stating that a family member cannot adversely possess communal land). The *Reid* pronouncement, however, was *dictum*. This Court has recognized that a family member can acquire title to his family's communal land by adverse possession for 30 years, as provided by A.S.C.A. § 37.0120. *Ava v. Logoai*, 19 A.S.R.2d 75, 77 (Land & Titles Div. 1991); *Puailoa v. Estate of Lagafuaina*, 11 A.S.R.2d 54, 74 (Land & Titles Div. 1989).

■ Possession is adverse if it is exclusive, continuous, open, notorious, and hostile to another person's ownership for the 30-year statutory period. *Magalei v. Atualevao*, 19 A.S.R.2d 86, 92, 94-95 (Land & Titles Div. 1991). However, a family member cannot adversely possess his family's communal land unless he first gives actual notice to other family members that he claims individual ownership of the land. *Tuanaitau v. Paogofie*, 4 A.S.R. 875, 881 (Trial Div. 1963).

■ During the trial in *Maluia,* if not before, Isumu through his testimony made it abundantly clear to his father Leapaga Tapili and Leapaga Masunu, then the family *sa'o,* that he claimed the land as his individually owned land. He thus gave actual notice to the Leapaga family of his ownership claim. Both before the trial, and certainly from that time forward, Isumu and his immediate family occupied and used the land without any contrary occupancy or other interference by other members of the Leapaga family. He and his family possessed the land exclusively, continuously, openly, notoriously, and hostilely to the Leapaga family's claim of ownership. Isumu adversely possessed the land far in excess of the required 30-year period—approximately 41 years from 1950 until LT No. 10-99 was filed in 1991. This is a classic case of adverse possession of the land by Isumu and his family as individually owned land against the Leapaga family's claim to the land as communal land. We conclude that as opposed to the Leapaga family, Isumu acquired title to the land by adverse possession, and Isumu's children as his successors retain that title.

C. Separate Issue: The Surveyor's Compensation

Lawrence P. French ("French"), a professional surveyor, was retained by the plaintiffs presently named in LT No. 10-99 to perform necessary professional survey services in the preparation for the trial of this action. On the day trial began, French requested postponement until the unpaid balance of his professional fees were paid. We denied the request but indicated we would order the named plaintiffs to pay the outstanding

amount.

French charged $2,840.00 for his services. His work was substantial and well done, and his fee is reasonable. As of the time of the trial, the named plaintiffs had paid him $1,805.00, leaving an unpaid balance of $1,035.00. Mr. French is entitled to payment of the unpaid balance.

### Order

1. Isumu Leapagatele and his children own the land named "Leatuvai," consisting of approximately 12.696 acres, in the Village of Nu'uuli, as their individually owned land.

2. The registration of the land in the name of "ISUMU LEAPAGA & CHILDREN (AS THEIR INDIVIDUALLY-OWNED LAND)" on January 7, 1972, in the Territorial Registrar' Office, is validated and remains in full force and effect.

3. The registration of the land named "Leatuvai" and consisting of approximately 13.190 acres in the Village of Nu'uuli in the name of the "Paepaeuli Family", as that fictitious family's communal land, on October 15, 1950; in the Territorial Registrar's Office, is voided.

4. The named plaintiffs, Tusipasi Tiapula, Savaliga Masunu, and Kolopa P. Tuiasosopo shall pay $1,035.00, the unpaid fees for professional surveyor services, to L.P. French Professional Services, Inc. Payment shall be made immediately, unless there is agreement on an alternative payment plan. Payment of the surveyor's fee is in addition to payment of usual costs of suit.

It is so ordered.